UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

```
_____
                              )
In re:                        )
MICHAEL G. FURLONG and        )   Chapter 7
JOANN FURLONG,                )   Case No. 06-42851-HJB
                              )
        Debtors,              )
_____)
                              )
MICHAEL G. FURLONG and        )
JOANN FURLONG,                )   Case No. 4:10-cv-40231-PBS
                              )   Case No. 4:10-cv-40222-PBS
        Appellants,           )
                              )
    v.                        )
                              )
ANDREW DONARUMO and           )
MURRAY SUPPLY CORPORATION,    )
                              )
        Appellees.            )
                              )
_____)
```

**MEMORANDUM AND ORDER**

April 1, 2011

Saris, U.S.D.J.

## I.    INTRODUCTION

On December 19, 2006, Michael and JoAnn Furlong (the "Furlongs") filed Chapter 7 bankruptcy petitions on behalf of themselves (the "personal bankruptcy") and their company, Drew's Plumbing & Heating II, Inc. ("Drew's Plumbing").  The Bankruptcy Court issued an opinion on September 28, 2010, which all the named parties here have appealed.  See In re Michael G. Furlong

1

and JoAnn Furlong, 437 B.R. 712 (Bankr. D. Mass. 2010). Andrew C. Donarumo ("Donarumo") and Murray Supply Corporation ("Murray") appeal the rulings of the Bankruptcy Court that certain causes of action against Donarumo were abandoned pursuant to 11 U.S.C. § 554 and that the assignment of Drew's Plumbing's claims to the Furlongs did not violate the automatic stay under 11 U.S.C. § 362. The Furlongs appeal the Bankruptcy Court's ruling that stock in Drew's Plumbing, property of the personal estate, entitles the Trustee to the value of these claims. The rulings of the Bankruptcy Court are **AFFIRMED**.

## II. FACTUAL BACKGROUND

On January 14, 2005, the Furlongs purchased Drew's Plumbing & Heating Company, Inc. from Donarumo and formed Drew's Plumbing. The Furlongs claim that the business failed as a result of Donarumo's efforts to compete against the newly formed Drew's Plumbing by poaching his former customers. Whatever the reason, Drew's Plumbing was not successful, and in December 2006 the Furlongs and Drew's Plumbing filed Chapter 7 bankruptcy petitions.

A Trustee was then appointed for both the Furlongs' bankruptcy and the corporate bankruptcy. In a meeting held on January 17, 2007, the Furlongs and the Trustee discussed the Furlongs' claims against Donarumo, and the Furlongs showed the

Trustee letters and emails substantiating their claims, as well as a draft complaint. The claims were listed as property of the estate in Schedule B of the Furlongs' bankruptcy schedule as "Claims for Breach of Contract (Andrew Donarumo et al.)." The same item was listed in the Drew's Plumbing bankruptcy schedule. The Trustee was unable to find an attorney willing to bring the claims on terms acceptable to the Trustee, and the Furlongs became concerned that the statute of limitations would run before they would be able to bring their claims against Donarumo.

The Furlongs asked the Trustee to formally abandon the claims as property of the estate, so that the Furlongs could bring suit themselves. At this time, however, the Trustee and the Furlongs were in a dispute over $5,000 in the Furlongs' bank account, and whether that sum was exempt in their personal bankruptcy case. The Trustee and the Furlongs reached an agreement that the $5,000 would be turned over to the Trustee if he agreed to abandon the claims against Donarumo in both the personal and the corporate bankruptcies. On November 6, 2007, the Trustee filed his Notice of Intention to Abandon ("Notice") in the personal bankruptcy case only. The Notice stated that the Trustee wished to abandon claims "based upon the Debtor's allegation that certain misrepresentation and other business related tort cause of action arose from the purchase of a

business known as Drew's Plumbing & Heating, Inc. II."[1]  The
Bankruptcy Court endorsed this notice on November 30, 2007.  The
Trustee also filed a No Asset and No Distribution Report with the
court in the Drew's Plumbing bankruptcy, and that case was closed
on December 28, 2007.  Donarumo never filed any objections to
these actions.

On January 10, 2008, the Furlongs filed suit against
Donarumo in Massachusetts Superior Court for breach of contract,
deceit, breach of fiduciary duty, Chapter 93A violations,
interference with advantageous business relationships, infliction
of emotional distress, rescission, and other equitable remedies.

To backtrack, on June 30, 2006, Drew's Plumbing had
surrendered certain business assets to its secured lender, Key
Bank; Key Bank, in turn, sold that collateral to a third party,
Gem Plumbing.  On January 13, 2010, after the state court suit
was filed, Gem Plumbing assigned rights or interests for claims
held against Donarumo to Drew's Plumbing.  The Furlongs then held
a meeting of the board of directors of Drew's Plumbing
(consisting solely of themselves), and assigned Drew's Plumbing's
claims to themselves in their personal capacities.  The Trustee,

---

[1] The Bankruptcy Court pointed out that, while the Notice was "drafted in gross violation of several well-settled rules of English grammar," In re Furlong, 437 B.R. at 720, use of the term "'sic' in the myriad of locations where it would have been appropriate" would only "further obfuscate the language" of the Notice.  Id. at 715 n.4.

4

despite his ownership of the Furlongs' 100% share in Drew's Plumbing, was not invited to this board meeting.

In its September 28, 2010 opinion, the Bankruptcy Court found that "the claims held by the Furlongs and Drew's Plumbing were duly abandoned, pursuant to 11 U.S.C. § 554; and . . . the stock in Drew's Plumbing owned by the Furlongs remains property of the estate, vested in the Trustee." Furlong, 437 B.R. at 721. The Bankruptcy Court also held that the transfer of the claims by Drew's Plumbing to the Furlongs personally did not violate the automatic stay. Donarumo appeals the Bankruptcy Court's rulings on abandonment and the automatic stay, and the Furlongs appeal the Bankruptcy Court's ruling on the stock ownership issue.

## V. DISCUSSION

### A. Standard of Review

This Court reviews the Bankruptcy Court's findings of fact for clear error and its conclusions of law de novo. Davis v. Cox, 356 F.3d 76, 82 (1st Cir. 2004).

### B. Abandonment

Bankruptcy, as defined by 11 U.S.C. § 541 (a)(1), includes "all legal or equitable interests of the debtor in the property as of the commencement of the case." The language of the statute has been construed very broadly. See In re Lalchandani, 279 B.R. 880, 883 (1st Cir. BAP, 2002) ("The scope of § 541 is broad and includes in the estate all kinds of property, including tangible

and intangible property."); see also Chartschlaa v. Nationwide Mut. Ins. Co., 538 F.3d 116, 122 (2d Cir. 2008) (per curiam) ("[E]very conceivable interest of the debtor, future, nonpossessory, contingent, speculative, derivative, is within reach of § 541." (quoting In re Yonikus, 996 F.2d 866, 869 (7th Cir. 1993))). These interests include causes of action "owned by the debtor or arising from the property of the estate." Chartschlaa, 538 F.3d at 122. It is the debtor's obligation to disclose all interests at the beginning of the bankruptcy proceedings. Id.

The issue of abandonment in bankruptcy cases is governed by 11 U.S.C. § 554:

> (a) After notice and a hearing, the trustee may abandon any property of the estate that is burdensome to the estate or that is of inconsequential value and benefit to the estate.
>
> (b) On request of a party in interest and after notice and a hearing, the court may order the trustee to abandon any property of the estate that is burdensome to the estate or that is of inconsequential value and benefit to the estate.
>
> (c) Unless the court orders otherwise, any property scheduled under section 521(a)(1) of this title not otherwise administered at the time of the closing of a case is abandoned to the debtor and administered for purposes of section 350 of this title.
>
> (d) Unless the court orders otherwise, property of the estate that is not abandoned under this section and that is not

>     administered in the case remains property of
>     the estate.

It is well-established that "abandonment presupposes knowledge." <u>Guaranty Residential Lending, Inc. v. Homestead Mortg. Co., L.L.C.</u>, 463 F. Supp. 2d 651, 661 (E.D. Mich. 2006) (citing <u>Collier on Bankruptcy</u> ¶ 554.03 (15th rev. ed. 2006)). Further, property must be formally scheduled in order to be subject to abandonment under § 554(c). See <u>Jeffrey v. Desmond</u>, 70 F.3d 183, 186 (1st Cir. 1995). Intent to abandon estate property must be unambiguous. See <u>Chartschlaa</u>, 538 F.3d at 124 ("Absent an unambiguous intent to abandon estate property, the proposed abandonment is not effective.").

The Bankruptcy Court held that the claims against Donarumo were properly abandoned under § 544(c) in the corporate bankruptcy and § 544(a) in the personal bankruptcy. Donarumo argues here that the Bankruptcy Court erred in these rulings.

<u>1. The Corporate Bankruptcy</u>

Because there was no notice of abandonment in the Drew's Plumbing bankruptcy case, the abandonment issue is governed by § 554(c), under which scheduled property not otherwise administered in the course of the proceeding reverts to the debtor at the close of the case. Donarumo argues that because the Schedules in these cases listed only "Claims for breach of contract," only breach-of-contract claims could have been abandoned at the close

7

of the case under § 554(c); all other claims, such as those sounding in tort, would remain property of the estate under § 554(d).

The legal question is whether the scheduling of one type of claim suffices to disclose other related claims, where the Trustee is aware of those other claims. The case law does not reveal a clear answer to this question. Donarumo contends that the debtors' discussions with the Trustee about legal claims did not qualify those claims for abandonment under § 554(c) because the claims were never scheduled. In <u>Jeffrey v. Desmond</u>, 70 F.3d 183, 186 (1st Cir. 1995), the First Circuit held that discussions with the Trustee about a state law claim did not result in abandonment of that claim absent formal scheduling thereof. The court emphasized that there is "no such concept of 'assumed abandonment,'" and that the failure to formally schedule the claim was dispositive of the abandonment issue. <u>Id.</u> at 186. <u>Jeffrey</u> does not squarely address the question at hand, however, since the debtors in that case failed to schedule <u>any</u> claims at all; here, the Furlongs did schedule their breach of contract claims, and their other claims arise within the same lawsuit. <u>See also</u> <u>Vreugdenhill v. Navistar Int'l Transp. Corp.</u>, 950 F.2d 524, 526 (8th Cir. 1991) (finding that unscheduled claim cannot be abandoned pursuant to § 554(c), even where discussed with trustee); <u>Graupner v. Town of Brookfield</u>, 450 F.Supp.2d 119, 125

(D. Mass. 2006) (holding that claims were not abandoned where Graupner did not list any of his claims in different cases on the schedule during the original bankruptcy proceeding.)

Closer to the mark are three cases in which the debtors scheduled <u>something</u> to indicate the existence of a cause of action, but not the specific claims that they sought to prosecute post-bankruptcy. The Bankruptcy Court relied primarily on <u>In re Bonner</u>, 330 B.R. 880, 2005 WL 2136204 (6th Cir. BAP, 2005). In that case, the court found that

> the debtors' scheduling of 'Auto Accident Claim' plainly and unambiguously included any claim that the debtors may have had for any personal injury arising out of the automobile accident. . . . By listing 'Auto Accident Claim,' the debtors gave the Trustee sufficient information alerting him to the possible existence of a personal injury claim and the need for further investigation. . . . A debtor involved in an automobile accident might have claims for pain and suffering, loss of income, medical expenses, loss of consortium, property damage and any other expenses incurred as a result of the accident. Under the Trustee's reasoning, each of these claims would have to be specifically delineated in the schedules in order for the debtors to sufficiently satisfy their 11 U.S.C. § 521(1) obligation. Clearly, the Code does not require detail of this degree.

<u>Id.</u> at *4.

Donarumo, however, points to two other cases that found debtors' scheduling to be inadequate. In <u>Tennyson v. Challenge Realty</u>, the plaintiffs filed suit alleging that their mortgage was void due to violations of the Truth in Lending Act and the Home Ownership and Equity Protection Act of 1994. 313 B.R. 402,

9

404 (Bankr. W.D. Ky. 2004). They also sought rescission of the mortgage on unconscionability grounds. The defendant, Challenge Realty, argued that plaintiffs had no standing to pursue their claims because they had not been listed in plaintiffs' bankruptcy schedule, and therefore remained property of the estate. Id. In the plaintiff's original bankruptcy schedules, there was no listing of claims or counterclaims, but the Schedule B was amended to include the TILA claim. Id. The rescission claim was known to the plaintiffs at the time their bankruptcy petition was filed, but was not included in the amendment to the Schedule B. Id. at 406. The Trustee had no notice of the rescission claim. Id. The court found that the scheduling of the real property underlying the plaintiffs' claims was insufficient notice to the Trustee of the unscheduled claims, and that the claims were therefore not abandoned at the close of the case under § 554. Id.

In Tilley v. Anixter Inc., the plaintiff filed for bankruptcy after getting divorced. 332 B.R. 501, 504 (D. Conn. 2005). In her bankruptcy petition, she included a "claim against her ex-husband and her ex-husband's employer for back child support." Id. at 507. She also included this claim on her Schedule C list of exempt property pursuant to 11 U.S.C. § 522(d)(10)(D), which provides an exemption for alimony and child support. In her Schedule B, the plaintiff failed to also list a claim for intentional infliction of emotional distress deriving

from the ex-husband's alleged deceptive withholding of child support.  Id.  The defendant argued that the tort claim for intentional infliction of emotional distress was not properly scheduled and remained the property of the plaintiff's bankruptcy estate.  Id.  The court ruled that

> the fact that the instant plaintiff's claim for intentional infliction of emotional distress may have arisen out of the defendant's failure to pay adequate child support did not absolve her of her duty to schedule it separately from a claim of back child support.  Whereas "it is common knowledge" that an "Auto Accident Claim" is likely to result in a personal injury claim, Bonner, 2005 WL 2136204 at *4, a claim "for back child support" does not similarly inform a trustee of the need to investigate whether the plaintiff had a claim for intentional infliction of distress arising out of fraud in connection with the reporting of Mr. Tilley's income.  The present emotional distress claim existed while the plaintiff was in bankruptcy, and the trustee lacked the information he needed to determine whether to pursue it.  Thus, it should have been scheduled separately on the plaintiff's bankruptcy petition.

Id. at 510-511.

The thread running through each of these cases is the courts' concern that the Trustee must be given sufficient information to determine whether to pursue the claim. Cusano v. Klein, 264 F.3d 936, 946 (9th Cir. 2001) ("Cusano's listing was not so defective that it would forestall a proper investigation of the asset.").  Indeed, in Tilley, the court emphasized the need to inform a Trustee of the need to investigate additional claims.  Id. at 511.  Critically, in both Tilley and Tennyson, the Trustee had no knowledge of the additional claims.  Here, by

11

contrast, the Furlongs informed the Trustee of the nature of their claims, even going so far as to present him with a draft complaint. Their tort claims and Chapter 93A claims are closely related both legally and factually to their breach of contract claims, and as such the scheduled claim was sufficient to inform both the Trustee and any potential creditors of the need to investigate the issue. Particularly in these circumstances, where the Trustee was fully aware of each claim, the Furlongs' Schedule B listing exhibited reasonable particularity and all of the claims at issue were consequently abandoned under § 554(c) at the close of the case.

### 2. The Personal Bankruptcy

Donarumo also argues that the Bankruptcy Court erred in finding that the Furlongs' personal claims against Donarumo were abandoned pursuant to § 554(a) in the personal bankruptcy. As noted above, the Trustee filed a "Notice of Intent to Abandon" in the personal bankruptcy case on November 6, 2007, based on his determination that "pursuing this litigation would not be cost effective for the estate." The notice stated that "the Trustee of the [Furlongs'] estate intends to abandon a cause of action against Andrew Donarumo. . . . The claim is based upon the Debtor's allegation that certain misrepresentation and other business related tort cause of action arose from the purchase of a business known as Drew's Plumbing & Heating, Inc. II."

12

Donarumo argues that the notice was so unclear that it lacked the requisite "clear and unequivocal" intent to abandon estate property. Chartschlaa v. Nationwide, 538 F.3d 116, 123 (2d Cir. 2008) (per curiam).

While the notice was certainly not a paragon of grammatical beauty, this Court agrees with the Bankruptcy Court that the Trustee's intent to abandon all of the claims arising from the purchase transaction was clear.

### C. **The Automatic Stay**

Donarumo's appeal challenges the Bankruptcy Court's determination that the Furlongs' transfer of the Drew's Plumbing claims from the corporation to themselves did not violate the automatic stay.[2] Under 11 U.S.C. § 362(a)(3), the filing of a bankruptcy petition serves as an automatic stay of "any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate." The automatic stay imposed under § 362 is lifted when the case is closed or dismissed. Under § 362(c),

> (1) the stay of an act against property of the estate under subsection (a) of this section continues until such property is no longer property of the estate;
> (2) the stay of any other act under subsection (a) of this section continues until the earliest of--

---

[2] Donarumo argues that any claims not properly abandoned in the Drew's Plumbing bankruptcy remain property of the estate and subject to the automatic stay. Because I have found that all of the claims were abandoned at the closing of the Drew's Plumbing case, this argument is moot.

13

>     (A) the time the case is closed;
>     (B) the time the case is dismissed; or
>     (C) if the case is a case under chapter 7 of this
>     title concerning an individual or a case under
>     chapter 9, 11, 12, or 13 of this title, the time a
>     discharge is granted or denied[.]

11 U.S.C. § 362(c).

Donarumo argues that the Furlongs' transfer of the Drew's Plumbing claims to themselves violated the automatic stay in the personal bankruptcy. The automatic stay prevents anyone but the Trustee from "exercis[ing] control over property of the estate," 11 U.S.C. § 362(a)(3). Donarumo argues that the transfer required voting the Drew's Plumbing shares, which remain property of the personal estate, and that this action constituted an "exercise of control" over the shares in violation of the automatic stay. Voting shares that are estate property constitutes "use" under § 363. See In re Consolidated Auto Recyclers, Inc., 123 B.R. 130, 140 (Bankr. D. Me. 1991).

Under state law, the transfer of "all, or substantially all, of [a corporation's] property, otherwise than in the usual and regular course of business," requires a shareholder vote. See M.G.L. Chapter 156D, § 12.02(a). Both sides agree that the claims were the only remaining assets of Drew's Plumbing. Therefore, the Furlongs' transfer, which Donarumo argues was not in the usual course of business, purportedly required the Trustee's approval as the 100% shareholder of Drew's Plumbing. Donarumo contends that by effecting the transfer without that

14

approval, the Furlongs "exercised control" over the stock shares in violation of the automatic stay. He further argues that the Trustee could not have approved the transfers in any event. In support of this argument, Donarumo cites 11 U.S.C. § 363(b)(1), under which the Trustee may only "use" estate property "other than in the ordinary course of business" with the consent of the bankruptcy court. Because the transfers were outside the ordinary course of business, says Donarumo, even the Trustee's approval as shareholder required court approval.

The Bankruptcy Court seems to have taken a different approach to this issue. The court found that the claims were transferred solely by the board of directors, without the consent of the stockholder trustee, and thus the transfer did not implicate the stock. It concluded that the transfer could not have violated the automatic stay. 437 B.R. at 721. The court noted that while transferring the claims did not involve "using" the stock in violation of the automatic stay, the transfer might nonetheless create liability under state corporations law:

> . . . the stockholder of Drew's Plumbing (the Trustee) may have a derivative claim against the Furlongs on the basis that the Furlongs received a fraudulent transfer from Drew's Plumbing under state law. In addition, there remain important questions under state law as to the voidability of the transfer of what appears to have been Drew's Plumbing's only remaining interest (the claims against Donarumo) without stockholder (the Trustee's) consent.

Id.

With regard to the transfer itself, as the Bankruptcy Court noted, the automatic stay "does not extend to the assets of a corporation in which the debtor has an interest, even if the interest is 100% of the corporate stock." Furlong, 437 B.R. at 721; see also Kreisler v. Goldberg, 478 F.3d 209, 213-14 (4th Cir. 2007); In re Winer, 158 B.R. 736, 743 (N.D. Ill. 1993); Personal Designs, Inc. v. Guymar, Inc., 80 B.R. 29, 30 (E.D. Pa. 1987).

Because Donarumo's argument depends on the legally untenable premise that the Furlongs utilized their shares in Drew's Plumbing to effectuate the transfer of the claims, the Bankruptcy Court did not err in concluding the transfer did not violate the automatic stay.

**D.    The Drew's Plumbing Stocks**

The Furlongs appeal the Bankruptcy Court's ruling that the Drew's Plumbing shares remain property of the personal bankruptcy estate. The Furlongs do not challenge the finding that the Drew's Plumbing stock "technically" remains within the personal bankruptcy estate, but contend instead that the intent of the Trustee was to abandon all rights and interests to the claims. The Furlongs argue that, in reliance on the Trustee's abandonment of the claims, they have invested substantial time, effort, and resources into the litigation of those claims in state court. They therefore request that this Court utilize its equitable

powers to order the Trustee to abandon the Drew's Plumbing shares.  The Trustee has not taken a position on the matter in this appeal, but the Furlongs' anxiety is well founded, as Donarumo has offered $5,000 to the Trustee in exchange for these shares.  The Furlongs' concerns notwithstanding, the Drew's Plumbing shares were never formally abandoned, and therefore the Bankruptcy Judge properly concluded they remain property of the personal estate.

## VI. CONCLUSION

The ruling of the Bankruptcy Court is **AFFIRMED**.

/s/ Patti B. Saris
PATTI B. SARIS
United States District Judge